# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                              **Case No. 06-CR-336**

**JEFFREY WINGERT**
        **Defendant.**

## SENTENCING MEMORANDUM

The government intercepted phone calls between defendant Jeffrey Wingert and Javier Aguilera, a large-scale drug distributor, during which defendant arranged to purchase cocaine. Defendant pleaded guilty to a violation of 21 U.S.C. § 843(b), use of a telephone to facilitate a felony drug offense, and I set the case for sentencing. In imposing sentence, I first calculate the advisory sentencing guideline range. Then, to ascertain the actual sentence, I apply the criteria set forth in 18 U.S.C. § 3553(a) to the facts and circumstances of the case. E.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008).

### I. GUIDELINES

Defendant's pre-sentence report ("PSR") recommended a base offense level of 12, based on a drug weight of less than 25 grams of cocaine, U.S.S.G. § 2D1.1(c)(14), then subtracted 2 levels for acceptance of responsibility, § 3E1.1, for a final offense level of 10. Coupled with defendant's criminal history category of VI, the PSR recommended an imprisonment range of 24-30 months. I found these calculations correct and adopted them

without objection.[1]

## II. SENTENCE

**A.  Section 3553(a) Factors**

Section 3553(a) directs the district court to consider the following factors in imposing sentence:

  (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2)   the need for the sentence imposed–

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  (3)   the kinds of sentences available;

  (4)   the advisory guideline range;

  (5)   any pertinent policy statements issued by the Sentencing Commission;

  (6)   the need to avoid unwarranted sentence disparities; and

  (7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

---

[1] Defendant made several factual objections/clarifications to the PSR, which did not affect the guidelines, and which I discussed on the record. He also objected to the inclusion of two offenses in his criminal history score, but he conceded that the category would be the same even if such offenses were excluded. I therefore made no formal rulings on these matters pursuant to Fed. R. Crim. P. 32(i)(3)(B). I also noted that the sentence would have been the same regardless of my findings on these objections and the specific guideline range.

The court must, after considering these factors, impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id. The guidelines carry no more weight than the other factors in making this determination. See United States v. Carter, 530 F.3d 565, 578 (7th Cir.), cert. denied, 77 U.S.L.W. 3242 (U.S. 2008). Thus, while the district court must give respectful consideration to the guidelines in determining a sufficient sentence, Gall v. United States, 128 S. Ct. 586, 594 (2007), it must consider the parties' arguments and determine an appropriate sentence "'without any thumb on the scale favoring a guideline sentence,'" United States v. Allday, 542 F.3d 571, 573 (7th Cir. 2008) (quoting United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007)). The court is free to impose a sentence above or below the guideline range so long as it adequately sets forth reasons, consistent with the § 3553(a) factors, for finding the sentence appropriate for the particular defendant. United States v. McKinney, 543 F.3d 911, 913-14 (7th Cir. 2008) (citing United States v. Castro-Juarez, 425 F.3d 430, 436 (7th Cir. 2005)).

**B.    Analysis**

    **1.    The Offense**

Defendant got caught up in the government's investigation of Aguilera and his cohorts, who operated a large-scale cocaine distribution organization in the Waukesha, Wisconsin area. The government obtained a wiretap for Aguilera's phone, pursuant to which it intercepted seven drug-related calls between defendant and Aguilera from July 11, 2006 to August 25, 2006, which revealed that Aguilera sold defendant small amounts of cocaine on several occasions, typically $^1/_8$ ounce or 1 gram quantities. Aguilera also referred defendant to his

3

cousin, Jose Aguilera, for drug purchases. Defendant used most of the cocaine personally, although he did at times share with another individual.

Defendant explained that in June or July 2006 he learned from a co-defendant that Aguilera, who worked for the same painting company as defendant, had cocaine for sale. Defendant was at the time struggling with substance abuse and started obtaining cocaine from Aguilera and other conspirators to whom Aguilera referred him for small purchases.

**2.     The Defendant**

Defendant was thirty-six years old, with a lengthy record: drunk driving in 1995; operating after suspension in 1995; battery in 1995; resisting and drunk driving in 1996 and 1999; two convictions for passing bad checks in 1999; two more drunk driving cases in 2000 and in 2001; operating after revocation in 2001; disorderly conduct in 2005; and drunk driving – fifth offense in 2007, for which he served 18 months in jail.

As his record suggested, defendant had a long history of substance abuse. He started drinking in his early teens and continued until his arrest in this case in December 2006. He admitted drinking up to eighteen beers per day in the two years prior to his arrest. He also reported regular marijuana use from 1987 to 2004. He started using cocaine in his early twenties, which also continued up until his arrest in this case. This long history of substance abuse, coupled with his record, presented a discouraging picture.

Defendant's recent conduct presented cause for hope, however. After dropping out of high school he earned his GED and HSED in 2007 and 2008 while detained at the Dodge County Jail. His instructor reported that his test scores were significantly above average, and that he was a responsible and competent student who took direction well. He also participated in the kitchen program at the jail, along with AA meetings. Following his release from jail in

4

September 2008, he enrolled in three separate counseling programs, all of which seemed to be going well.

Defendant also demonstrated a solid work ethic, regularly working as a painter when not in custody. Following his release in September 2008, he promptly obtained two jobs in order to support and provide insurance for his three children, ages eleven, ten and eight. Although no longer romantically involved with the mother, he moved back in with her and the children, and at the sentencing hearing she spoke highly of his efforts to maintain sobriety and support their children. The two also jointly enrolled in family counseling in order to make their relationship work for the benefit of the children.

### 3. Guidelines and Purposes of Sentencing

As indicated above, the guidelines recommended 24-30 months in prison. Defendant requested a sentence of probation. Although defendant's record gave me pause, I ultimately concluded that a lengthy period of probation made the most sense here, both for defendant and for the public.

I first determined that prison was not necessary to provide just punishment in this case. See 18 U.S.C. § 3553(a)(2)(A). The offense conduct here was, as federal drug cases go, quite minor: a few instances of acquiring small amounts of cocaine for personal use, over a short period of time. The record contained no indication that defendant provided any assistance to the underlying conspiracy; he simply bought cocaine from Aguilera and his cohorts; and, it appeared that the amounts he sought were so small Aguilera did not want to be bothered with defendant and thus pawned him off on others. Although defendant did at times share the cocaine he obtained with another individual (the co-defendant who initially referred him to Aguilera), the record contained no evidence that he re-distributed cocaine to his own

5

customers.

I also took into account in considering the need for just punishment the fact that defendant spent several months in pre-trial detention in this case, and served an 18 month state drunk driving sentence in the Dodge Jail while this matter was pending. As defendant suggested, it seemed likely that the state sentence was longer than it otherwise would have been due to the pendency of this case. I concluded that a further period of home detention provided a sufficient additional measure of punishment.

The closer question was whether prison was necessary to protect the public and deter, given defendant's record. See 18 U.S.C. § 3553(a)(2)(B) & (C). Defendant compared himself favorably to others who pled guilty to phone counts in this case (two of whom I previously sentenced to probation). It did appear that defendant's involvement in the offense was significantly less than their's; however, his record was worse.

For two reasons, I concluded that defendant's record should not preclude a probationary sentence. First, most of defendant's convictions were related, directly or indirectly, to substance abuse. He had only one prior felony, and that was his fifth offense drunk driving case. The 2005 disorderly case related to a drunken altercation. There was no indication of violent conduct when defendant was sober. Nor did defendant have a prior record of drug distribution. In my experience, most category VI offenders have more significant felony records, containing violent offenses or drug crimes. See, e.g., United States v. Eisinger, 321 F. Supp. 2d 997, 1007 (E.D. Wis. 2004) (collecting cases granting criminal history departures based on records elevated by minor, substance-abuse related offenses and/or on the absence of serious felony convictions).

Second, I concluded that it was in the best interest both of defendant and the public that

6

he get his substance under control, and that he be monitored for the longest possible period to ensure that he did. I was authorized by statute to place defendant on probation for up to five years, see 18 U.S.C. § 3561(c), while supervised release was limited to one year, see 18 U.S.C. § 3583(b)(3).

As discussed above, there was cause to believe that defendant could get it together in the community. Following his arrest in this case, he maintained sobriety for nearly two years. Granted, much of that time had been spent in custody, but his conduct otherwise suggested a commitment to staying sober. While in custody, he regularly attended AA and provided a certificate attesting to his attendance. After his release in September 2008, he enrolled in treatment programs at Attic Counseling and La Casa, with weekly group meetings, and continued attending NA. All of his screens on pre-trial release were negative. As indicated, he also enrolled in counseling through Family Services of Waukesha County, and his counselor wrote that he appeared committed to sobriety. As also noted above, he earned his HSED and a certificate for his work at the Dodge Jail. This good conduct suggested that he was committed to better behavior.[2] It also suggested that a sentence served in the community would best provide for defendant's treatment needs, see 18 U.S.C. § 3553(a)(2)(D), and would be sufficient to protect the public. I concluded that the prospect of revocation – both of his probation in this case and of his state extended supervision in the fifth offense drunk driving case – provided a sufficient deterrent to future crimes. Finally, he was working and supporting his children, which was certainly in society's best interest.[3]

---

[2] I also took into account the statements of defendant's ex-girlfriend and defendant's allocution in concluding that his commitment to change was genuine.

[3] I received a letter from one of his two employers attesting to his work ethic.

7

## III. CONCLUSION

Therefore, I placed defendant on probation for five years. This sentence varied from the guidelines, but because it was well-supported by the § 3553(a) factors it created no unwarranted disparity. See 18 U.S.C. § 3553(a)(6). As conditions, I ordered defendant to maintain sobriety; to participate in drug testing and treatment; to avoid taverns or other establishments where alcohol was the principal item of sale; and to serve 180 days of home confinement on electronic monitoring. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 24th day of November, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge